IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | No. 23-178 |
| | : | |
| **TURAN AMES** | : | |
| | : | |

MEMORANDUM

**KENNEY, J.**                                                                                                        **August 28, 2023**

I.      **BACKGROUND**

Defendant Turan Ames ("Ames") is charged in a one count Indictment with possession of a firearm by a person previously convicted of a crime punishable by more than one year of imprisonment, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. Specifically, the Government alleges that on December 20, 2022, Ames was arrested on an outstanding warrant for a parole violation and a firearm was recovered from his waistband. *See* ECF No. 21 at 1–3; ECF No. 19 at 3.

Prior to this offense, Ames was convicted of five felonies in Philadelphia County as a result of two guilty pleas. First, he pled guilty to Robbery – Taking from Another by Force in violation of 18 Pa. Cons. Stat. § 3701(A)(1)(v), a felony of the third degree – punishable by up to seven years of incarceration, and Conspiracy in violation of 18 Pa. Cons. Stat. § 903. *Id.* at 2. Second, Ames was convicted of two counts of Aggravated Assault in violation of 18 Pa. Cons. Stat. § 2702 – a felony of the first degree punishable by up to twenty years of incarceration, and Possession of a Firearm by a Prohibited Person in violation of 18 Pa. Cons. Stat. § 6105 – a felony of the second degree punishable by up to ten years of incarceration, after an incident where Ames fired a shotgun towards a house where a birthday party was taking place and struck two individuals. *Id.* at 2–3.

1

Ames moves to dismiss the present Indictment asserting that the prosecution stands in violation of his Second Amendment right to bear arms following *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) and *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc) and argues that 18 U.S.C. § 922(g)(1) is unconstitutional on its face. ECF No. 19. The Government filed a response in opposition. ECF No. 21. For the reasons that follow, Ames' Motion (ECF No. 19) is denied. An appropriate Order will follow.

## II.     AMES' AS-APPLIED CHALLENGE

In *Bruen*, the Supreme Court set forth a history-based framework for deciding whether a firearm regulation is constitutional under the Second Amendment. 142 S. Ct. at 2127. In *Range*, the en banc Third Circuit explained that under this framework, courts must first determine "whether the text of the Second Amendment applies to a person and his proposed conduct" and, "if it does, the government . . . must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 69 F.4th at 101 (quoting *Bruen*, 142 S. Ct. at 2127, 2134–35) (internal quotation marks omitted).

In *Range*, the Third Circuit was considering a civil action brought by Bryan Range seeking a declaration that 18 U.S.C. § 922(g)(1) violated the Second Amendment as applied to him and an injunction prohibiting the law's enforcement against him. *Id.* at 98–99. In 1995, Mr. Range pleaded guilty to making a false statement to obtain food stamps in violation of Pennsylvania law—a single misdemeanor conviction which was punishable by up to five years' imprisonment. *Id.* at 98. This felony-equivalent conviction precluded Mr. Range from possessing a firearm pursuant to 18 U.S.C. § 922(g)(1). *Id.* The Third Circuit, en banc, while noting that their decision was "a narrow one," applied the *Bruen* framework and concluded that 18 U.S.C. § 922(g)(1) was unconstitutional as applied to Mr. Range. *Id.* at 106.

Here, Ames summarily argues that 18 U.S.C. § 922(g)(1) as applied to him is unconstitutional. ECF No. 19 at 2. Applying the *Bruen* framework to the facts of this case, the threshold question is whether Ames is one of "the people" protected by the Second Amendment despite having prior felony convictions. *Range*, 69 F.4th at 101. In *Range*, the Third Circuit majority held that "the people" in the constitutional text refers to all Americans and not only law-abiding persons. *Id.* The Third Circuit agreed with a statement of then-Judge Barrett that "'all people have the right to keep and bear arms,' though the legislature may constitutionally 'strip certain groups of that right.'" *Id.* at 102 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting)). Accordingly, the Government does not dispute that under *Range*, Ames is one of "the people" protected by the Second Amendment. ECF No. 21 at 6.

Having determined that Ames is one of "the people," the next question is whether "'the Second Amendment's plain text covers [Ames'] conduct,' and 'the Constitution presumptively protects that conduct.'" *Range*, 69 F.4th at 103 (quoting *Bruen*, 142 S. Ct. at 2126). In *Range*, the Third Circuit found: "Range's request—to possess a rifle to hunt and a shotgun to defend himself at home—tracks the constitutional right as defined by *Heller*." *Id.* Although Ames' Motion states, "[a]s the Third Circuit made clear in *Range,* the Second Amendment covers Mr. Ames and his possession of a firearm, and it is the government's burden to demonstrate that permanent disarmament of Mr. Ames is consistent with the nation's historical tradition of firearm regulation," (ECF No. 19 at 2), Ames does not put forth any facts indicating how the Second Amendment's plain text covers Ames' conduct. On the other hand, the Government argues that the Second Amendment does not apply because Ames does not maintain that he possessed a firearm for a lawful purpose and the Second Amendment does not protect Ames' possession of a firearm while serving a criminal sentence. ECF No. 21 at 7–10. The Court need not resolve whether Ames'

3

conduct is covered by the plan text of the Second Amendment, because, even if his conduct is covered, the Government has affirmatively shown that 18 U.S.C. § 922(g)(1) is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

In *Bruen*, the Supreme Court established that the Government may justify a restriction on firearm possession "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2130. "Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.'" *Range*, 69 F.4th at 103 (quoting *Bruen*, 142 S. Ct. at 2133). "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Bruen*, 142 S. Ct. at 2133. The Supreme Court has explained that the question is, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133. Therefore, this Court must examine the historical analogues identified by the Government in this case to determine whether the Government has met its burden to establish a historical analogue for criminalization of firearm possession by a person who, like Ames, has been convicted of felony robbery and aggravated assault offenses.

Importantly, the Supreme Court has repeatedly noted in their recent opinions interpreting the Second Amendment that their opinions do not cast doubt on certain presumptively lawful regulatory measures such as longstanding prohibitions on the possession of firearms by felons. For example, in *District of Columbia* v. *Heller*, the Court specifically noted that "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons" and such a prohibition is "presumptively lawful." 554 U.S. 570, 626–27 n.26. Similarly, two concurring opinions in *Bruen* reaffirmed the Supreme Court's statements in *Heller*

4

that felon dispossession statutes are longstanding and presumptively lawful. *See Bruen*, 142 S. Ct. 2157 (Alito, J., concurring) (noting that the decision does not "disturb[] anything that [the Court] said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns"); *see also id.* at 2162 (Kavanaugh, J., concurring) (emphasizing that "the Second Amendment allows a 'variety' of gun regulations," and *Bruen* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons" (citation omitted)). Similarly, Judge Ambro's concurring opinion in *Range*, which was joined by Judges Greenaway and Montgomery-Reeves, indicated that while the Government failed to carry its burden in *Range* that did not mean 18 U.S.C. § 922(g)(1) was doomed, rather "[i]t remains presumptively lawful." *Range*, 69 F.4th at 109–110 (internal quotation marks and citation omitted). Judge Ambro's concurrence explained that 18 U.S.C. § 922(g)(1):

> . . . fits within our Nation's history and tradition of disarming those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society. That Range does not conceivably pose such a threat says nothing about those who do. And I join the majority opinion with the understanding that it speaks only to his situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like.

*Id.* at 110.

In light of this guidance by the Supreme Court and Judge Ambro, considering the historical analogues cited in the Government's Opposition, the Court finds that 18 U.S.C. § 922(g)(1) is constitutional as applied to Ames. Firearm regulation in the era of the Second Amendment's ratification disarmed individuals who "posed a potential danger" to others. *See* ECF No. 21 at 12 (citations omitted); *see also Range*, 69 F.4th at 109–110 (Ambro, J., concurring); *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023) (concluding "that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms [and]

[w]hether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons."). Here, Ames is unquestionably not "like Range." Ames' crimes of robbery and aggravated assault are paradigmatic violent crimes. As explained in the Government's brief, Ames' prior convictions demonstrate that he poses a danger to society. Accordingly, the Government has carried its burden of proving that Ames' poses a threat to the orderly functioning of society, and therefore Section 922(g)(1) is constitutional as applied to Ames.

### III.     AMES' REMAINING ARGUMENTS

The bulk of Ames' Motion argues that 18 U.S.C § 922(g)(1) is unconstitutional on its face, the statute is unconstitutionally vague, and the Supreme Court should revisit its post-New Deal precedent straying from the Commerce Clause's original public meaning. ECF No. 19 at 3–6. These arguments are without merit. First, "[a] party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (en banc) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Thus, Ames must show that Section 922(g)(1) "is unconstitutional in all of its applications." *Id.* (internal quotation marks and citation omitted). Here, Ames has not satisfied this burden because he cannot demonstrate that Section 922(g)(1) violates the Second Amendment in all applications. In fact, as detailed above, Ames cannot even show that Section 922(g)(1) is unconstitutional as applied in his case. Therefore, Ames' facial challenge fails.

Ames' void-for-vagueness argument also fails. A criminal statute is impermissibly vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted). Section 922(g)(1) is not vague as

it clearly bars the possession of a firearm by any person who has previously been convicted of a crime punishable by more than one year in prison (or of certain misdemeanors as specifically defined). Whether 18 U.S.C. § 922(g)(1) offends other constitutional rules, presents a separate issue, that is properly litigated in applied challenges such as *Range*.

Lastly, in order to preserve the argument, Ames asserts that the prohibition in Section 922(g)(1) of possession by a felon of a firearm that has traveled in interstate commerce violates the Commerce Clause, as it exceeds Congress' authority to regulate interstate commerce. ECF No. 19 at 5–6. However, as Ames acknowledges, the law forecloses this argument, and therefore, this argument does not support dismissal of the Indictment.

## IV.     CONCLUSION

For the foregoing reasons, Ames' Motion to Dismiss the Indictment (ECF No. 19) is denied. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**